Judge Underwood
delivered the opinion of the Court.
Brookie and C. Kearns entered into a written contract concerning 210 acres of land, sold by Kearns to Brookie, for the consideration of $>2100, payable by instalments, for which Brookie executed three notes, for $>700, each. J udgment was obtained on one of these notes, by Kearns’s assignee, Barbour. Brookie injoined the whole judgment, alleging that by his contract with Kearns, he had a right to avoid the contract by surrendering the land; that finding he had made a bad bargain, he was about to avail himself of the privilege of surrendering the land, when Kearns, to induce him to keep it, agreed to credit the note assigned to Barbour, with $400, in consideration of which agreement he kept the land, and provided to make payment. Nevertheless, Kearns and Barbour failed to allow the credit. Brookie exhibits the contract under which, he insists on the right, at his option, to avoid the contract, by surrendering the land. If that contract gave him no such right, then the foundation upon which all thei equity relied on by him, rests, sinks, and with it, all his claim to relief, disappears. This is the provision *512 of the contract, which secures to Brookie the right, contended for, if it exists; “but if the said William Brookie, his heirs, or assigns, shall fail to make good the above payments, (to wit, paying the several instalments, at the times stipulated and named,) in that case the above tract of land shall revert back to the said Christopher Kearns, his heirs, or assigns.” According to the contract, the payment of the purchase money was a precedent condition, to executing the conveyance. There is no express stipulation that Kearns is to surrender the notes, or that he will not use coercive measures to enforce their payment, if Brookie did not discharge them punctual!/. /•; must be inferred from the extract given, if it exists. We are of opinion that the quotation does not warrant the conclusion contended for. ft amounts to no more than a declaration of what the law is, that if the money was never paid. Kearns should hold the title to the land. It Would require an arbitrary enlargement of the meaning of the sentence, to make it operate as a covenant on the part of Kearns, to surrender the notes, or never to sue on them. There is neither allegation nor proof, that such was the intent or understanding of the parties, at the time their contract was reduced to writing, or that the sentence quoted, was inserted for the pu rpose of conveying that meaning. We are, therefore, of opinion, that Brookie has entirely failed to shew that he had a right, at his option, to throw back the land oh Kearns, and avoid the contract. Having thus disposed of the written contract, no difficulty is presented, in relation to the agreement, to allow a credit for $400i If that agreement was entered into precisely in the terms stated by Brookie, it cannot be enforced, because it is parol, not based on any new condition, and would conflict with the legal operation of the written contract. But we are inclined to the opinion, from the whole tenor of the testimony, that the promise to credit $400, was a gratuity, originating subsequent to the trade, and its performance made to depend upon the punctuality of Brookie. His defalcation deprives him of all pretext to exact it. Kearns allowed Barbour $400, to induce him to take an assignment on the notes, without recourse, and this sum, we think, most probably, was to be allowed Brookie, it he paid punctually
Title bond for land, to be pa-d for by in-talments, containing following clause, ‘but if said ven-dee fail to make good the above payments, in that case, above tract of land to revert back to vendor,’ does not authorize vendee to surrender land, and rescind contract at option. Clause, a mounts to no more than what law is, that if purchase money is not paid, vendor shall hold title.
Monroe, for plaintiffs; T, Crittenden, for defendants.
The attempt to set off the judgment purchased by Í5rookie from Harding, cannot be indulged, for many reasons, not necessary to be stated. The dércee of the circuit court is reversed, and the cause when the circuit court will dismiss the bill, with costs, dissolving the injunction, and giving ten per cent, damages on the whole amount, which has been iivjoined. The court ought to have decreed damages on the partial dissolution of the injunction; as that was not done, to give damages now on the whole amount, will substantially cure the error.
The plaintiffs in error must recover their costs in this court.